Please be seated. Mr. Wiggins, you may proceed. Good morning, your honors. My name is Seth Wiggins and I'm here on behalf of, as the bailiff indicated, the defendant appellant, Mr. Nicholas Bauer. Before the court are three questions presented. First, whether essentially he could feel he has a diagnosis is generally accepted and if the trial court erred in relying upon hemophilia and allowing an expert to rely upon hemophilia as reason. Second question presented is whether the trial court abused its discretion in allowing an expert to testify as to the hemophilia diagnosis. Third question presented is essentially a sufficiency of the evidence challenge as to the trial court's finding that Mr. Bauer, the appellant, is a sexually violent person. So I will portion heavily my time to the first issue as the latter two issues are dependent largely on what the court finds as to that first issue presented. Well, there was a prior hearing, correct? Yes, your honor. Now, we didn't have one in new. At least we don't know. We said it, or it was sent back for that, but we don't know if they actually had one and we haven't seen it again. So this, is this the first one you have been able to find that has gone to the appellate court? Yes, your honor. This is a matter of first impression. This is the first time this issue will be litigated. It was flirted with, essentially, with the new court. They addressed whether or not it should be subject to Frye. And in opining that it should, and remanding it for that purpose, it did identify that there were certain issues raised with the matter that raised more questions than it set. So I'd like to address all those issues now. So turning to the... Is, is the term hemophilia a distinction without a difference? It's totally, correct me if I'm wrong, a subset of pedophilia, is that correct? It's not correct, your honor. I believe the distinction would be this. One, it depends, depends on how you define pedophilia. There's, there's multiple in the record. First, if we look at the DSM-5, pedophilia says, pre-pubescent up to age 13 scientifically. If you look at the ICD-10, which is also espoused in the record using the international community, that one is in the ICD-10. The 10th edition is pre-pubescent and early pubertal, again, contemplating age 13, but doesn't necessarily have an age cutoff. So when you look at the hemophilia diagnosis as proposed, that contemplates ages 11 to 14, which cuts outside of... So I might not have been wrong. I might just have been referencing a perspective based upon the international viewpoint, as opposed to the DSV, I think it's called, or something. DSM, your honor. Because you seem to have changed the definition based upon whether we're talking international or non-international. Correct. And that's actually part, embedded within my argument is the inconsistency between the two with word, shape, and text. Additionally, in looking at the ICD-10, that's no longer the current edition. Well, Ruth Bader Ginsburg said we should pay attention to international law. Do you think she's right? Well, one, I believe there's a concept that would be true. I wouldn't necessarily disagree with Justice Ginsburg. However, as applied here, we need to look at what the relevant community is. So the relevant scientific community here, the trial court defined on page 719 of the common law record, 19 of its opinion, following the bribery, that the relevant community is those psychiatrists and psychologists who, as part of their everyday work, either research, evaluate, or treat sexual paraphilias. We argued in our brief, and I'll argue orally now, that that is too broad of a definition. That's not a relevant scientific community as applied to this issue. In 2000- I'm sorry, could you tell me why? Because it seemed to me like you had narrowed it down to certain individuals in the field that apparently have some, if it isn't direct, it's pretty closely indirect contact or a relationship with the party who is under inspection. Your Honor, the way that I'd address that is this, the relevant scientific community, well, psychiatry and psychology of sciences don't necessarily have jurisdictions. So the science doesn't necessarily contain itself within the United States, as I'm about to quasi-argue. This issue is the relevant scientific community for the purposes of defining mental disorder. Mental disorder not colloquially defined, but defined within the Sexual Violent Persons Commitment Act in Illinois. The way that's defined is a congenital or acquired condition that affects the emotional or volitional capacity of one as they're predisposed to possibly commit sexually violent acts. So it's a very specific mental disorder, not a general term. When the legislature put that definition to that and included, for the purposes of that definition, that term in what is required to find someone sexually violent in person, they did so not contemplating some foreign jurisdiction's use of standards or licensure or testing in their science, but instead what is used here in this jurisdiction where it's enacted and put to use in the United States or more particularly in the state of Illinois. Now, when you contemplate that as a relevant portion of the scientific community and we look for a reasonable subset there, which is the standards set forth in Frye, that it's substantially established to gain the general acceptance in a reasonable subset of the relevant scientific community, we don't see that. We don't see it in the authoritative text used in the United States, which is the Diagnostic Statistical Manual now, the fifth edition, so DSM-5. It's nowhere to be found. Not only is it nowhere to be found as in it hasn't been addressed yet, it was applied to be included and categorically rejected. Why? Because it's empirically deplete. Now, the state has its own. Because it's empirically. Deplete. Deplete? Deplete. It has no empirical basis in which we are able to rely or find validity in the concept to then include it in this diagnostic manual. The state has its own argument about that. I'll address that as well, but turning back to the relevant community, it's not in the authoritative text that the relevant community uses. It hasn't been litigated. In addition to that, the research that has been done is limited to three. We've got the California state research, state of Wisconsin, state of Florida. There are iterator reliability. In other words, while peers are talking to peers about how reliable we can determine this methodology or principle to be, there are problems there. And that was testified to by defense witness in the prior hearing. And for all those reasons, we fail to meet the standard of general acceptance in the relevant scientific community. However, I'd like to address, because it was briefed in state's brief, and I don't want to leave any stone unturned. If your honors instead decide, you know what, that's bunk, the United States is not the limitation on the relevant scientific community, so let's explain it globally, as the state would want you to have. Let's look at that. What authoritative text does the international community use? Well, it's the one produced by the World Health Organization. The International Classification of Diseases, ICD-10, as briefed in the record. In that, again, there's no diagnosis known as hemophilia, period. There's diagnosis known as pedophilia, spelled and pronounced differently than DSM pedophilia. And in an expansion of the definitional language, we can kind of form it to capture the spirit of hemophilia, but there's quite a bit of inferential leaps that need to be done in order to do so. A different way they could have addressed it, if it were generally accepted in that community, is have its own diagnosis in the text. It's not there because it's not generally accepted. However, even if we look at the fact that pedophilia says prepubescent and early pubescent, which we can essentially amount to as hemophilia proposal, the ICD-10 is no longer the edition in use. It's now the ICD-11, 11th edition. What is incredibly important about that is now early pubertal is no longer included in the language for pedophilia. There's no extra inclusion of the new hemophilia term. That's not there. As long as we could find it somewhat supplanted in the pedophilia definition, that's no longer there. So you have two authoritative texts referenced in the record. You've got the DSM-5. DSM-5 says, should we put it in? Nope. We don't trust the science. Not putting it in there. It's rejected. We've got the ICD. Originally had some sort of language that could be kind of twisted to be hemophilia. Now that's been deliberately deleted. That was a deliberate choice by that community, by the World Health Organization, who publishes that text. Well, does the DSM's determination mean it's not reliable or it is something we do not need within this field because there are other relevant definitions that would cover it, cover the issue of this age group in, as Justice McLaren asked, in paraphilia, pedophilia, whatever the case may be? Your Honor, the way I'd address that is this, and this is kind of what the state's witnesses essentially tried to do. I'm going to tie what they did into answering your question. So they diagnosed under the other specified paraphilia disorder. So in previous DSMs, it was not otherwise specified, now OSPD. Put a hyphen, put hemophilia at the end, called that a diagnosis. Here's why it's not. It was submitted for inclusion into the DSM, absolutely rejected. Now in a catch-all category, the other specified paraphilia disorders, in other words, what's not specified right there in the text with criteria subsets in order to counterbalance whether someone actually qualifies for that diagnosis. You've got this catch-all phrase. It absolutely abandoned logic to say, here's a diagnosis that we're not allowing in this book. However, go ahead and take that disallowed, rejected diagnosis and attach it to a catch-all, and you're good. That makes absolutely no sense on any standard, let alone the standard for a prior test of general acceptance. But they've done it with other things. In the autism area, they have pervasive developmental disability, slash not otherwise specified. Not otherwise specified is something that they know there is an issue, but it is not as clearly defined as autism. And so why is this different? Well, it's different for two reasons here. One, the classification that you just referenced in respect to autism or being on the spectrum for that, I personally do not know that that was submitted for inclusion, then rejected, and then they're using it after the fact so that it's actually consistent with this reference. So there's a distinction there potentially. But two, when you diagnose under the OSPD or the previous NOS diagnosis, the catch-all classification, what is absent is a criteria subset. So in other words, if the state were to make a diagnosis under this diagnosis section, there's no criteria for me to then say, OK, let me cross-examine you as to what's there or what's not there. There's simply no guidance, as in the specified paraphilias in the book. Additionally, the DSM actually thinks about this exact situation. It says, do not use this category, not in these words, of course, but generally, don't use this category in an abusive way where you're essentially trying to cram in, like they are here, a diagnosis that we otherwise do not include in this book or that otherwise does not have the empirical data to enforce the reliability and validity issues that we need trust in. The definition that was not accepted was a condition whereby this alleged defendant or this defendant allegedly was seducing and having his way with young females. I think it's between the ages of 13 and 14, is that not correct? As well as 15 and 16. 15 and 16, OK, but I thought he was at least communicating with 13 and 14 as well. And we would concede as much, yes, sir. And if, in fact, he was doing that, would that be covered by the diagnosis of just pedophilia? Well, I believe the inclusion of the age 14 would actually not allow for the diagnosis of pedophilia in the DSM-5 because it caps at the age 13. However, to the extent that there's 13-year-old contemplated in this fact pattern, as well as 13 being allowed age under the pedophilia diagnosis, it would have to be persistent for a period of six months directed to that specific preference. And here we have in the fact pattern of the record 14-year-olds, 15-year-olds, 16-year-olds. And I believe that's exactly why the state's witness did not diagnose him with pedophilia, and instead is trying this very dubious new idea of hemophilia. So there are researchers who believe that there are defendants who are obsessed with 13- and 14-year-olds, and there are those that are obsessed with 15- and 16-year-olds? I'm familiar with e-hemophilia, which is a direction of sexual preference for, as it relates to paraphilia, for 15- and 16-year-olds. However, it's not as it contains it. Well, my point is, assuming for purposes of argument, because I'm not sure that the evidence was presented in this case, but there are sexual deviants who would diddle babies, if they could, and all the way up to 85, fertile octogenarians or people even older than that. And so these people who are perverse in that way would fit into some category somewhere, would they not? Presumably so, yes, sir. And so using the term hemophilia, which relates to a particular age group, what is inherently defective about labeling an obsession that relates to that particular age group when it appears that the other obsessive diagnoses relate to different age groups, which are apparently arbitrary, because I don't think pedophilia has a root in Roman or Latin that suggests that it relates to a particular age of children other than pedagogy, or I guess we're talking about a pediatrician and supposedly young children. So I think what I'm asking you is, why is this an improper diagnosis if it's nothing more than a determination of a diagnosis of a paraphilia or some sort of sexual deviancy that can be attributed or relating to a particular age group? And with my time out, may I still answer? Sure, that's why you're here, to answer questions. Thank you. We've read the briefs. Sure. You know. I have a three-part answer to that, and sorry that I'm going over time for this. One, the reason that while hemophilia is a concept that contemplates the 11- to 14-year age range, there's victims within some, some of the victims were within the 11- to 14-year age range. What's different here is the fact that there is criminality does not amount to pathology as far as psychiatry and psychology is concerned. And that is what relates to the mental disorder, which is a prong in the SBP Commitment Act. The need be satisfied in order to find beyond a reasonable doubt that he should be considered SBP. So while it has a dick factor, it's gross. My daughter is near the 11-year-old cutoff. I hate even thinking about the facts alleged in this record. However, that dick factor in criminality, the fact that we've codified a statute that makes it a crime, does not mean that in the study and science of psychiatry and psychology that it is a pathological disease inherent to be a paraphilia. Additionally, even if it were assessed to some measure by some people as you relate, couldn't it be possible some people could call this hemophilia? That's not the standard here, Your Honor, and it's a very important distinction. That's, in fact, exactly what Frye tries to exclude. It doesn't want any expert to come in and be able to say, I'm an expert, here's a scientific idea, let me attach my expert clout to this idea, and all of a sudden make it sound something good to the trier effect. It wants any new or novel concept here, hemophilia, to have general acceptance by the relevant scientific community, and that is absent, absolutely absent in this situation. Would the phrase not specified cover somebody with a pathology for 13, 14-year-olds, 11 to 14-year-olds? No, and that was testified to by a defense witness at the Frye hearing saying that this would not be something that other specified paraphilia disorder, not otherwise specified as Your Honor referenced previous terminology, is not able to be used for a hemophilia diagnosis. That would be, I'll put it in court's terms, that would be like me coming before you right now and saying, you know what, please don't find this to be generally accepted for all these arguments. State comes before you and says, find this to be generally accepted for all therapies. You make a determination, I hope it's not this, but you make a determination, it's generally acceptable, okay? That's what we're relying upon. That's the measure, the standard. If I go to my circles of legal professionals and say, I don't care about this decision over here, it's nonetheless not generally accepted, and use that as a legal standard, that makes no sense. The decision's been made. I can't come over here and say, actually, I'm going to go ahead and say it's something else. That's exactly what they're doing here with the DSM-5. Hemophilia, please be included in the DSM. You're not included. Okay, I'm going to go to a catch-all category and nonetheless include myself. The decision's been made. That's counter to the decision made by the publishing association. So if I understand the logic of your argument, when it says not specified, it means a diagnosis that is unspecific, but it does not include all forms of pathological behavior because apparently there may be something that is not specified that it also is not deemed to be a pathology. Your Honor, not because of your explanation, but because of my attention span here, I think I lost myself in that question, but I think the spirit of your question is asking, essentially, why can't this be included as an OSPD? What I'm saying is if it's an obsession or a pathology, and researchers say that it is, or at least a substantial number or plurality says it is, but you say it doesn't fit because it doesn't fit within the definition of not specified. I'm having a problem with the idea of something that when you say it's not specified, supposedly it doesn't fit within it even though it's not specified. So if I said to you, go and get a screw from the screw drawer, and you brought me any screw in that series of drawers, and I said, no, you didn't give me the one I specified, and you said to me, well, you didn't specify. And the point is, is if it isn't specified, but it's a screw, doesn't that fit the definition? No. Respectfully, no, Your Honor. The definition is clear in DSM for that category, that it's not to be abused for things that lack empirical research. No. The DSM says it shouldn't be recognized in its own sense. It shouldn't have its own label. But does it also say that anything our definition of not specified is anything that, quote, unquote, we've never voted on? Put another way, when it says not specified, what does it mean? Does it relate to men? Does it relate to women as subjects or victims? What does it relate when it says it's not specified? It sounds to me like it's an oxymoron. So my point is, if it is an oxymoron, and it can mean more than one thing, why can't it mean other things that researchers do, but supposedly, for whatever reasons, political or otherwise, or philosophical, don't vote to recognize it as a specific subset? Your Honor, I would answer that this way. The spirit of Your Honor's contention I understand, and I'm going to make a distinction nonetheless. The reason that it is not to satisfy the general acceptance test here is because whether or not we can say, okay, well, it's not specified in the DSM because it's not included. So the fact that it's not specified means we can plug it in over here under the otherwise specified paraphilic disorder, something that's not specified. That doesn't necessarily mean, and this is what the test is, that it's generally accepted within the relevant scientific community. That's the test before the court. Not whether or not it can be plugged into a diagnosis here or not, because if it could, that's not dispositive, but it's generally accepted. What's more dispositive is the fact that it was rejected. If it is recognized, but it's not recognized as a subset, then is it or is it not recognized as not specified? I would say in a general sense that it falls within that. However, there's a cautionary note in the DSM for this exact situation not to occur and for the exact reason that it puts it at risk, that we would supplant a general acceptance of an idea that's been rejected from inclusion just because it falls into some general definitional term of not specified, because it's not. Because it's not specified, it falls into this bucket. That's not the way the DSM was intended to work, Your Honor, and I would argue that it doesn't meet the general acceptance. You'll have a chance to confuse me some more later. All right. Thank you, Your Honor. Thank you. Mr. Mohler, you may proceed. May it please the Court. Counsel, I think we need to take a step back and get into the actual question that's before the Court today. We're not talking about the statutory interpretation on the SVP. We're not really talking about SVP processes in general. We're talking about an evidentiary question, about the low admissibility threshold that is the Frye standard. And the Frye standard asks, is a scientific principle generally accepted by this relevant scientific community? And what the Illinois court has said, that's a simple test. Do you count the scientists? Are there a substantial subset, which is less than a majority, but a substantial subset of scientists in the relevant field who believe that the science you're trying to use is valid? And when we look and we count the scientists, we see that more than a substantial subset, most of them say that this hemophilia diagnosis is valid and it's reliable. We can tell that because when we look to the scholarly articles about hemophilia, we see that the vast majority of those scholarly articles come out in favor of hemophilia. I believe the actual number... You mean they come out in favor of the diagnosis of hemophilia. I don't think they actually... Yes, I apologize. They come out in favor of the validity of the diagnosis. And the scholarly work is the best method we have of judging. If we're going to count scientists, that's the best way we have to do it. But even going beyond that, even if we try to go to just a numbers approach, respondents' own expert divided the relevant group up into three. And to be clear, I think my understanding, at least, is the only debate between the parties on what the relevant expert field is is are we counting domestic scientists or are we counting international scientists as well. Other than that, I believe there's agreement that it's the psychologists and psychiatrists who work with sexual offenders. But when we look at what their own expert said about those groups, he said, well, there's three parts to them. There's one part. They're the researchers. They do all the research on this work. And, yeah, they pretty much all agree that this is a valid diagnosis. He said there's the forensic experts. That's the expert, like the experts testifying at the Fry hearing. And he says, well, it's about half and half. The half that work for the state, they agree with it. The half that work for respondents in this situation, they don't agree with it. And then he said there's a fair group. There's these clinicians who work out in the community, and he didn't really know enough to say what they did. Now, if you look at that, that sounds like it's much more than half, or at least close to half, let alone substantial. Do the Fry testifiers or witnesses, on behalf of the defendant, have a category for a diagnosis which they may ultimately decide or conclude or opine that their client doesn't have the problem? Yes. And that's why I'm – And what is their subset? What is the label that they stick on when they say that they don't agree with the diagnosis? Well, frequently they'll just say they don't think there's a paraphilic disorder there if they don't believe that they're not within the pedophile. The underlying pedophile diagnosis, which would be, officially in the DSM, is below 13, but it has more to do with maturity stages. I think it's important to note that their own expert in this case said, well, yes, under the DSM he meets all the qualifications for pedophilia, but I think he likes 14-year-olds, and that's why he didn't diagnose him with that. That's in the record. And so there is this overlap that's kind of hard to distinguish what the actual scientific boundaries are between pedophilia and hemophilia. But the thing is, that's not for the court. The whole purpose of the Fry test is that we don't want lawyers, we don't want judges to have to try and figure out the validity and reasonability of scientific methods. So that's why we ask, what do the experts say? And in this case, in the articles, the experts say that hemophilia is a real diagnosis. Whether it's part of a bigger pedophilia diagnosis or it's a related paraphilic disorder, yes, it's something that happens. It's important. Why aren't the ages just stripped from the whole definitions and diagnosis and just call it one large diagnosis? Well, that's what they did in the international community, at least with the ICD-10. And I would take a moment to say I don't know anything about the ICD-11 at this point. It wasn't at the Fry hearing, it wasn't in the briefing. So if the court would like to consider that, I would respectfully request that I think the appropriate thing would then be to order a supplemental briefing because it has not come up before this point. But as for what was in the record and what we do know, the ICD-10, they say that's the best way to look at it. And it's because when you try to put ages on it, you're really using ages as a stand-in for a harder concept. Is this pubescent? Is this post-pubescent? And so that's what the international community has done. There's one community that hasn't done that specifically, and that's the American, the APA. And I think looking at the record, it's quite clear why they haven't. The international community is fine saying, yes, we know this is a reliable diagnosis. We see it, we see the studies that use it and identify it. But in America, we have civil commitment for sexually violent people. They don't have that in any other country that I'm aware of. And because of that, we've injected politics into the science. And so looking into that, it does answer some of the questions the Supreme Court had. Could you be a little bit more specific as to how politics was insinuated into diagnosis? Yes, Your Honor. I would start that it's uncontroversial. It was testified to by all the witnesses that generally professionals, especially in the APA, are against the SVP process. They don't like that their science is being used to commit people indefinitely. And so that's what we start from. We then have the process of— So it's not necessarily political as it is philosophical? I guess, Your Honor. Getting into it, it would be your ideology about how you feel about— More moral issues? Yes, Your Honor, about civil commitment. And then we look at it. We see in the DSM, when it was going from four to five, you had a subset of psychologists and psychiatrists who work every day, who do their research in the field with sexual offenders and their paraphilic disorders and things of that nature. Those highly specialized in this small group said, You know what? Hepatitis is a real disorder. We should have it clarified explicitly in the DSM. It's important to note—it wasn't brought up in the opposing counsel's argument— is that this did not start with that DSM conversation, because in the old version, the DSM-IV, psychiatrists and psychologists were doing what they're doing now. They were diagnosing it as a nonspecified diagnosis, because the DSM has always said, Look, we haven't written down every disease, every disorder that's out there. We recognize there's an inability to do so, and so they have this residual category that used to be called PNOS, and now is OSPD, that says, Look, we're going to warn you psychologists to be careful. Use your science. But we know you are on the field. You can diagnose something that's not explicitly written down. So when we get to this changeover from DSM-IV to DSM-V, those who were most qualified, most at least familiar with sex offenses and the paraphilias around that, they said, Yes, this is something that we should separate out, and we'll put it up. It then goes up to a higher board, a board that is not as specialized. It can have psychiatrists and psychologists from varying fields, and they voted it down. But what they did not do is they did not change the DSM in any way to stop scientists who had for a long time been diagnosing hemophilia under this nonspecified category. So it's a mixed bag. You can say that they did not add hemophilia into the DSM-V, but by the same token, they didn't take any steps to stop the regular practice of diagnosing in the catch-all category. Well, why does counsel say that it was categorically rejected? What was rejected? Was it the age or the disorder generally? My understanding, and I think a point of contention between parties, is that just the fact that it wasn't specified out, put out as its own category stand-alone, that's all we know happened. We also know they didn't change this residual category other than to change the name that people were using to diagnose hemophilia, and that's why I don't think it's accurate to say that they flat-out rejected hemophilia diagnosis. What most likely happened, and you can see from the record and take the reasonable inference, is they know SVP commitments are happening. They know that if you have it specified on its own in the DSM with those categories laid out, it's a lot harder to get up and testify that, oh, I don't think this is a real disorder. You're saying that if the DSM was supposed to be more clearly constituted, it would say other than defined and specifically excluding hemophilia. I think it could have that in there, or it could have some reference to it. If we're going to say that they're rejecting this as a diagnosis, there has to be some actual rejection of what's occurring. Other than that, I would just say it's more a matter of we can't really take now what they fully meant to do and say. They meant to say this isn't a valid diagnosis without some actual activity to stop what's happening in the diagnosis being made. So I think we have to also recognize that the DSM is not dispositive. The Illinois Supreme Court noted in New that it was not included. This is nothing novel from New. The DSM-IV changed to the DSM-CLI before New was decided. New said, look, it's not in the DSM. That means there's this question up here. What the Court didn't say is, well, it's not in the DSM, so we stop now. Our discussion is over. Clearly, the Illinois Supreme Court knew that this could be a valid diagnosis without being specifically called out in the DSM because it didn't stop the process when it knew that. It said, no, let's have the Friday hearing, figure out. You're saying that DSM is not a synchronized? I don't think so, no, Your Honor. I don't think it speaks for the community as a whole necessarily. I think there's been testimony as the Supreme Court requested for the Friday hearing to get into why is it not in the DSM-V, and we have a clearer picture of that now. And we're also able to look to the international community and note that in the international community, this isn't controversial. And I think it's important to pick out that there hasn't really been a good explanation of why we're going to divide from the domestic experts from the international experts. And it comes back to this idea that the Frye test is not about law. The Frye test is about what the scientists say. There aren't jurisdictions in science. The science community nowadays is a global community, and there just hasn't been a rationale for why we're not going to listen to the international scientists, particularly when there's been so clearly a delineation of why opinions may be differing, and that's because there's this contentious political, philosophical, or moral debate about SVP proceedings. But we're at a threshold question. We're not talking about SVP. We're talking about in any court can a hemophilia diagnosis come in under the Frye test. Could I encapsulate your argument thusly? The international has specifically labeled the diagnosis as hemophilia. The domestic has specifically labeled it nonspecified. Those proponents of it domestically use the nonspecified. They still call it hemophilia, Your Honor. And it's because of the nature of that nonspecified category in that you say OSPD. And the Supreme Court in New said that it's a guide and not an instrument by which benchmarks are made and measured. I think what they were saying in New is that the DSM is clearly an important document. We know it's not in there. So what they were looking at in New, and it's important to remember, is they didn't have a Frye hearing. They were saying is this so clearly unanimous that we don't have to have a Frye hearing. That's all New is about is is this so clearly unanimous that we don't have to go into this Frye hearing. It wasn't. There's this issue with there's a manual in the field that seems to at least not have this diagnosis specifically in it. And we don't have the reasoning for that. We don't have further explanation or introspection into that. So that's what we're doing now. We have more information. We have more arguments about, look, it is in the DSM, or it can be diagnosed under the DSM. It's just not in specific categories. There's lots of disorders that aren't in specific categories. And it should be noted that the appellate court has held that OSPD non-consent, that's a different paraphilic disorder. They've said that the appellate court has ruled with some consistency throughout the districts, that OSPD non-consent, that's not specifically called out in the DSM, and yet that passes the standards for reliability in the courts of Illinois. So this question of DSM being the end of our discussion makes no sense, because it wasn't the end of the discussion for the Supreme Court. It doesn't apply to other things this appellate court has held. So unless there are further questions, I'd ask that you affirm the judgment of the trial court. Thank you. Mr. Wiggins, you may proceed. Yes, sir. Thank you. I'm going to try to be brief, since I only have five minutes in brevity. It's not my forte. But I'd like to address a few things. First of all, I asked you the question posed by Justice McClaren. You asked the State, if you're encapsulating his argument correctly, that in the ICD, the international community, they have a hemophilia diagnosis. DSM, they have not otherwise specified, or OSPD. He didn't actually address the part that you talked about, the international community having hemophilia. But the answer to that is no, which is succinctly within the appellant's argument. There's no hemophilia diagnosis in the ICD-10 in the record, or 11, which is the current edition used. Instead, it's contained within the pedophilia. And furthermore, as argued in my initial oral argument, and if the State would like supplemental briefs, I would be happy to do that as to the issue of the ICD-11 being the current edition and what its language is, that excludes early pubertal, which is that language used to encapsulate the spirit of hemophilia in the ICD. It's no longer there. You said it excludes it? Correct. Does that mean that there is no problem, no pathology with that particular age group, or we just don't have a name for it? I would say that both authoritative texts as to mental health communities, which is better able to decide what science is and what's pathological than any of us in the room here, respectfully, both of them say early pubertal is not pathological. Neither of them have that. It's not in the DSM. It's not in the ICD. It was in the ICD-10 for contemplation. It's been deliberately taken out. Now, because of the 2010 McCown case, Your Honors are able to look outside of the record and to contemplate legal and scientific articles. I would encourage you to do so, and in looking at the ICD-11, you'll see the language, that it is exclusive pedophilia, which is what the State's possible diagnosis or inclusion of the international community strengthens their argument that that's the relevant scientific community that shows general acceptance. It doesn't, insofar as the new edition excludes early pubertal. It instead says pedophilia is only prepubescent, which, by the way, is before this contemplated hepaphilia age subset of 11 to 14. Now, further rebutting what the State brought up, when he said that there's a transgression from the DSM-4 or transcendence from the DSM-4 to the DSM-5, and he argues that, importantly, the DSM-5 doesn't take out that otherwise specified paraphilic disorder, OSPD, which was NOS in DSM-4, and because it didn't do anything to say you can't diagnose hepaphilia under OSPD, it's able to be diagnosed. Again, this abandons logic. First of all, the fact in the DSM-4 with NOS, hepaphilia had not been submitted for inclusion into the DSM yet. Afterwards, it was submitted to be included as they were revising and starting the DSM-5, and in that submission for inclusion, it was denied. It was rejected. So where you could diagnose it under the NOS catch-all classification here, because there's nothing specifically saying you can't, okay? Let's take that logic and apply it over here to the DSM-5. What happened in the middle? We said no hepaphilia. So you can say over here it qualifies under this catch-all. It's not specified, as to a lot of your questions in my earlier argument. Not specified, therefore, it can be not otherwise specified. Here we say, hey, Mom and Dad, can we put hepaphilia in the book? They say no, and then we continue once we get the book to say, I'm still going to label it as something that's not otherwise specified, otherwise specified paraphilic disorder. If I understand your argument correctly, what you're saying is what was recognized with a different label previously in the number four volume is no longer recognized as a pathology in number five, and that's because the powers that be did not use the hepaphilia label, and they didn't say, oh, and by the way, it's now to be included over in the other side with the OSPD. Your Honor, yes, that's exactly the spirit of my argument, except I would also add two things to that. One, because inherent in your question is the matter of politics and citing the powers that be. Part of the state's argument said politics was a matter of why this is in the DSM-5, not a lack of general acceptance, which is the test before the court. That's bumped as well. The state's witnesses at the Frey hearing said hepaphilia has been around for six decades, 60-plus years. The very first legislation in our United States that addresses any sort of sexually violent predator, sexually violent persons, any type of legislation like this to then act as political motivation for the APA to not include it in the DSM because they don't want to widen the net of people that can be committed under these paraphernalias. That was in the state of Washington in 1990. It's been around for 60 years. 1990 was the first time that there was something that served as this political motivation to not include it in the DSM. So that's a 30-year surplus of years that they could have submitted it in the DSM, could have submitted it in the ICD, whatever editions were relevant at that time. They didn't do so even when there was a political motivation to disinclude this diagnosis from the authoritative text. So the political motivation cannot be the reason it's not in there. Instead, it's because just as the defense witness testified at the Frey hearing, there's not empirical basis, reliability, validity, which is outside the scope of Frey, but to the extent it was spoken to in that hearing, those things are absent. And the test here, general acceptance, is not met. And for those reasons, Your Honor, I would ask that the trial court's findings be reversed as to the general acceptance. Additionally, that the two arguments which we didn't get to address, there would be a reversal as to it relates to the abuse of discretion and the sufficiency of the evidence as well. And I appreciate that. Thank you. There will be a short recess. We have one more case.